REQUESTED BY: Lawrence S. Primeau, Director Department of Administrative Services
You state that you are contemplating certain proposed legislation to be introduced in the 1997 legislative session, and therefore, you have requested our opinion on a number of legal issues involving state employee buy-outs. We will respond to each of the questions you presented separately below.
1. Is there a legal right to continued employment?
The general rule in Nebraska with respect to the right of employment is the "at will" rule. That is, when the employment is not for a definite term, and there are no contractual or statutory restrictions upon the right of discharge, an employer may lawfully discharge an employee whenever and for whatever cause he chooses, without incurring any liability. Smith v. Cityof Omaha, 220 Neb. 217, 369 N.W.2d 67 (1985); Mau v. OmahaNational Bank, 207 Neb. 308, 299 N.W.2d 147 (1980). As a result, government employment, in the absence of legislation, can be revoked at the will of the appointing officer, so long as the public employee is not dismissed or terminated for constitutionally impermissible reasons such as race, religion, or the assertion of rights guaranteed by law or under the Constitution. Nevels v. State, 205 Neb. 642, 289 N.W.2d 511
(1980).
While the "at will" rule applies generally to state employment, a public employee cannot be deprived of a property interest in continued employment without a due process hearing and appropriate notice. Benton v. Board of Education of SchoolDistrict No. 17, 219 Neb. 134, 361 N.W.2d 515 (1985); Weeks v.State Board of Education, 204 Neb. 659, 284 N.W.2d 843 (1979). The existence of such a property interest must be determined by state law. Packett v. Stenberg, 969 F.2d 721 (8th Cir. 1992). Typically, such a property interest arises from statutory or contractual limitations on the employer's ability to terminate an employee, and a court must look to the contract of employment and to state law to determine if there are any rules or understandings that secure certain benefits and support claims of entitlement to those benefits. Packett v. Stenberg, supra;Tautfest v. City of Lincoln, 742 F.2d 477 (8th Cir. 1984).
The statutes creating the Nebraska State Personnel Service are found generally at Neb. Rev. Stat. §§ 81-1301 through81-1354.05 (1994, Cum. Supp. 1996). In addition, the State Personnel Division of the Department of Administrative Services has promulgated the Classified System Personnel Rules Regulations ("Personnel Rules"), 273 NAC 1-16, and those regulations were duly adopted in accordance with the provisions of the Nebraska Administrative Procedure Act. As a result, the Personnel Rules are as binding as statutes enacted by the Legislature. DouglasCounty Welfare Administration v. Parks, 204 Neb. 570,284 N.W.2d 10 (1979). The Personnel Rules apply to certain classified or "code" agencies, while other agencies and departments of state government are specifically exempted from coverage under those rules. See Neb. Rev. Stat. § 81-1316 (Cum. Supp. 1996); 273 NAC 1. In addition, state employees covered by collective bargaining agreements or union contracts are not covered by the Personnel Rules to the extent that their contracts provide separately for wages, hours, and other terms and conditions of employment. 273 NAC 1.
Under the Personnel Rules, new state employees serve an initial six-month probationary period during which they may be separated from state employment at any time without grievance rights. 273 NAC 5. However, after that probationary period, the Personnel Rules establish certain specified offenses which will lead to disciplinary action against state employees, including dismissal. 273 NAC 13. Presumably, non-probationary state employees subject to the Personnel Rules may not be terminated for disciplinary reasons in the absence of such an offense.[1]
In addition, the Personnel Rules establish rules for state employee lay-offs and bumping rights.[2] 273 NAC 12.
We believe that the statutes and Personnel Rules establishing the State Personnel Service create a property interest in continued state employment which cannot be abrogated for the state employees covered by those rules without a due process hearing and appropriate notice. See also Packett v. Stenberg,969 F.2d 721 (8th Cir. 1992) (stating that state employees in Nebraska are "arguably" granted a property interest in their employment by the state personnel system which sets forth procedures for selection, compensation, grievances, etc. of state employees); Hill v. Gerber, 217 Neb. 670, 350 N.W.2d 545 (1984) (impliedly recognizing a property interest in public employment under the Nebraska Merit System). Also, in the event of state employee lay-offs caused by decreased funding or other reasons, state employees with bumping rights under the Personnel Rules have a property interest in the exercise of those rights. Seealso Smith v. Sorensen, 748 F.2d 427 (8th Cir. 1984) (interpreting the nature of the bumping rights under the reduction in force guidelines established by the Nebraska Merit System).
With that analysis in mind, it seems to us that the answer to your initial question is "yes," to a limited degree. That is, state employees who are not covered by the Personnel System and Personnel Rules or who are not covered by a labor contract generally have no legal right to continued employment. On the other hand, state employees subject to the Personnel Rules or labor contracts have the rights established by those enactments and agreements and are not employees "at will." In that limited sense, therefore, those latter state employees have some legal right to continued employment.
2. Can a value be assigned to continued employment?
We are not entirely sure what you mean by "value" in your second question. However, if a person were to be improperly deprived of a legitimate contractual right to continued employment, we assume that, in the context of litigation, some theory could be developed to place a value on that contract right. Such damage theories are frequently developed by actuaries, economists, statisticians and the like in litigation. Therefore, to that extent, we believe that some "value" could be assigned to continuing employment. However, we are not certain what the precise nature of such a valuation theory would be, and it also seems to us that such a process would be speculative in many respects, given the number of imponderables in government employment.
3. If continued employment is a legal right and can be assigned a quantifiable value, can the value be paid to any state employee?
At the outset, it seems to us that there are two possible issues included in this question. First, your question could involve the issue of whether the Personnel Division of the Department of Administrative Services may pay the quantifiable value of continued employment to any state employee under the existing Nebraska statutes pertaining to the Personnel Service. Alternatively, given your preamble regarding proposed legislation, your third question could also involve the issue of whether legislation might constitutionally be drafted which would allow the state to pay the value of continued employment to any state employee. We have previously indicated that, under Fullmerv. State, 94 Neb. 217, 142 N.W. 908 (1913), it is our responsibility to provide opinions to state officers upon questions of law which arise "in the discharge of their duties." Op. Att'y Gen. No. 157 (December 24, 1985). In keeping with that responsibility, it has been our general practice and policy to issue opinions to members of the Legislature only with respect to pending or proposed legislation and not with respect to the requirements of existing statutes. Op. Att'y Gen. No. 157 (December 24, 1985). Conversely, since it is generally the duty of members of the Executive Branch of government to apply and enforce the existing statutes, we have made it our policy to issue opinions to Executive officers only with respect to their duties under existing statutes and not with respect to proposed legislation. Based upon those policies, we will limit our response to your third question to the first issue noted above. We prefer to address the alternative issue in the context of an opinion request from a legislator in reference to specific proposed legislation.
Generally, an administrative body has no power or authority other than that specifically conferred upon it by statute or by a construction of the statutes necessary to accomplish its purpose.Ventura v. State Equal Opportunity Commission, 246 Neb. 116,517 N.W.2d 368 (1994). We have reviewed the various statutes pertaining to the State Personnel Service, the State Personnel Division, and the Director of Personnel, and we have found no existing statutes which specifically authorize the state to pay the quantifiable value of continued employment to any state employee.[3] As a result, we do not believe that the value of continued employment can be paid to any state employee under the existing statutes. This is particularly true since those same statutes provide that other types of payment can be made for the value of employee benefits under certain circumstances. For example, under Neb. Rev. Stat. § 81-1328 (1994), state employees who retire or voluntarily separate from state employment can be paid for their accumulated vacation time. And, under Neb. Rev. Stat. § 81-1325 (1994), state employees who retire can be paid for certain portions of their accumulated sick leave. Consequently, we believe that the answer to your third question, as we have articulated it, is "no."
4. Can a value be assigned to bumping rights?
Our answer to this question is much the same as our answer to question 2 above. If a person were to be improperly deprived of a legitimate contractual right to "bump" other employees in the event of force reductions or lay-offs, we assume that, in the context of litigation, some theory could be developed to place a value on that contract right. Therefore, to that extent, we believe that some "value" could be assigned to bumping rights. Again, however, we are not certain what the precise nature of such a valuation theory would be, and the process would obviously be speculative in many respects.
5. If a value can be assigned to bumping rights, may the state, without a general reduction in force program, offer a buy-out to an employee or a certain class of employees in lieu of an employee exercising his or her bumping rights, resulting in the exit of the employee from employment in state government and the filling of the vacant position by another individual? Would that outcome be different if the position were eliminated?
For the reasons discussed in our answer to your question number 3 above, we will limit our response to your question number 5 to the issue of whether the existing statutes allow the Personnel Division of the Department of Administrative Services, without a general reduction in force program, to offer a buy-out to a state employee or a certain class of state employees in lieu of an employee exercising his or her bumping rights, thus resulting in the exit of the particular employee from employment in state government and the filling of the vacant position by another individual. Once again, we have reviewed the various statutes pertaining to the State Personnel Service, the State Personnel Division, and the Director of Personnel, and we have found no existing statutes which specifically authorize the state to offer a buy-out to the employee or employees involved in the situation you described. Therefore, our answer to your initial question number 5 is "no." Our answer would remain the same if the position or positions in question were eliminated.
6. If a value can be assigned to bumping rights, can the state offer a buy-out to only one class of employees in lieu of exercising their bumping rights? Would the outcome be different if the position were eliminated?
For the reasons discussed in our answer to your question number 3 above, we will limit our response to your question number 6 to the issue of whether the existing statutes allow the Personnel Division of the Department of Administrative Services to offer a buy-out to only one class of employees in lieu of exercising their bumping rights. We have reviewed the various statutes pertaining to the State Personnel Service, the State Personnel Division, and the Director of Personnel, and we have found no existing statutes which specifically authorize the state to offer a buy-out to only one class of employees in lieu of exercising their bumping rights. Therefore, our answer to your initial question number 6 is "no." Our answer would remain the same if the position in question was eliminated.
7. Is the right to continued employment a state liability that may be purchased by the state in consideration for the employee's current accrued benefits? (Benefits may include sick leave, annual leave, health insurance, and vested retirement benefits.) Would the outcome be different if the position were eliminated?
For the reasons discussed in our answer to your question number 3 above, we will limit our response to your question number 7 to the issue of whether the existing statutes allow the Personnel Division of the Department of Administrative Services to purchase any limited right to continued state employment in consideration for the employee's current accrued benefits such as sick leave, annual leave, health insurance, and vested retirement benefits. We have reviewed the various statutes pertaining to the State Personnel Service, the State Personnel Division, and the Director of Personnel, and we have found no existing statutes which specifically authorize the state to purchase any limited right to continued state employment in consideration for the employee's current accrued benefits. Therefore, our answer to your initial question number 7 is "no." Our answer would remain the same if the position in question was eliminated.
8. Is the right to continued employment a state liability that may be purchased by the state in consideration for the employee's current accrued and future benefits calculated to current dollar value? (Benefits may include sick leave, annual leave, health insurance, future social security contributions, and vested and future retirement benefits.) Would the outcome be different if the position were eliminated?
For the reasons discussed in our answer to your question number 3 above, we will limit our response to your question number 8 to the issue of whether the existing statutes allow the Personnel Division of the Department of Administrative Services to purchase any limited right to continued state employment in consideration for the employee's current accrued and future benefits calculated to current dollar value. We have reviewed the various statutes pertaining to the State Personnel Service, the State Personnel Division, and the Director of Personnel, and we have found no existing statutes which specifically authorize the state to purchase any limited right to continued state employment in consideration for the employee's current accrued and future benefits calculated to current dollar value. Therefore, our answer to your initial question number 8 is "no." Our answer would remain the same if the position in question was eliminated.
Sincerely yours,
 DON STENBERG Attorney General
 Dale A. Comer Assistant Attorney General
Approved by:
Don Stenberg
Attorney General
[1] Employment with the state is always contingent upon sufficient funding by the Legislature. If the Legislature were to reduce funding for a particular agency subject to the Personnel Rules and thereby require reductions in force, the bumping rights available to state employees under the Personnel Rules would apply. See infra note 2.
[2] To "bump" is to fill a position with an employee of greater seniority at the expense of one with less seniority, so that the senior employee may avoid layoff. Smith v. Sorensen, 748 F.2d 427
(8th Cir. 1984).
[3] The provisions of the Nebraska State Employees Collective Bargaining Act, Neb. Rev. Stat. §§ 81-1369 through 81-1390
(1994), do give the Chief Negotiator of the Division of Employee Relations of DAS broad authority to bargain and negotiate labor contracts with the unions representing various state employees. Under § 81-1371(9), for example, that authority may even include terms and conditions of employment which may otherwise by provided by law for state employees under certain circumstances. Those statutes might conceivably allow collective bargaining for the purchase of continuing employment rights, but to properly consider that question, we would need to review the specifics of the contractual proposal at issue.